IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

Lonnie T. Brown,                                    Case No. 5:14CV1406

           Petitioner

        v.                                         **ORDER**

Kimberly Clipper, Warden,

           Respondent

This is a state prisoner's habeas-corpus case under 28 U.S.C. § 2254.

In September, 2011, a jury in the Common Pleas Court of Wayne County, Ohio, convicted the petitioner, Lonnie Brown, of the aggravated murder of Jamie Hout. The trial court sentenced Brown to life in prison. *State v. Brown*, 2013-Ohio-2945 (Ohio App.).

After taking a direct appeal and pursuing, unsuccessfully, postconviction relief in the Ohio courts, Brown filed a habeas petition in this court.

He claims, *inter alia*, that his trial lawyer was ineffective for not subpoenaing or calling as defense witnesses a man named Librado, who allegedly confessed to killing Hout, and Hannah Van Brunt, to whom Librado made the inculpatory statement. He also contends that his appellate lawyer never told him the deadline for filing a postconviction petition, an omission that allegedly caused Brown to file a petition that the state courts rejected as untimely.

Pending is Magistrate Judge Vecchiarelli's Report and Recommendation, which found that Brown's claims are either procedurally defaulted or meritless. (Doc. 37). Brown has filed an objection. (Doc. 40).

For the following reasons, I overrule the objection, adopt the R&R – subject to several important caveats expressed below – as the order of the court, and deny the petition for a writ of habeas corpus.

## Background

### A. Trial and Direct Appeal

On May 5, 2011, Officer Michael Smith, of the Orrville Police Department, responded to a 911 call about a screaming man outside the home where Hout lived. There he found Brown crying and saying that Hout's dead body was in the living room. *Brown*, *supra*, 2013-Ohio-2945, at ¶¶7–8.

Brown told Officer Smith that he and Hout had "a father-daughter type of relationship," and that they usually spoke every day. *Id.* at ¶8.

Brown had last seen Hout two days previously, on May 3, at her home, when Hout had left "abruptly to 'go turn tricks' for some Mexicans." *Id.* When Brown stopped by Hout's home on May 5 to check on her, he found both the front and back doors locked, which was unusual. Brown found a stool, propped it up to open a back window, and crawled into the kitchen. "When he saw [Hout] lying in the living room, he ran out the front door and yelled for someone to call 911." *Id.*

Brown also told Officer Smith that, a week earlier, Hout told him that "she had stolen some cocaine from some Guatemalans." *Id.*

Based on Brown's statement, "the police were focusing their investigation on the Mexicans and Guatemalans who had contact with [Hout]." *Id.*; *see also id.* at ¶11 ("Based on [Detective Joshua

Hunt's] familiarity with the victim coupled with Brown's statement, Detective Hunt believed that the murder suspect was an Hispanic male with a connection to drugs.").

Police soon concluded, however, that Brown had concocted this story to cover-up his role in killing Hout.

Hout died by strangulation, with contributing factors of blunt- and sharp-force trauma to her head. *Id.* at ¶13.

Police discovered a broken beer bottle and a smashed candle holder near Hout's body. Further investigation established that there were "two bloody fingerprints positioned upside down on the broken beer bottle neck," and that these prints matched Brown's. *Id.* at ¶12. Due to the positioning of the prints on the bottle, moreover, a forensic expert concluded that "Brown held the bottle upside down, a position which would have indicated the bottle's use as a weapon." *Id.* at ¶14.

A second forensic expert testified that she found Hout's blood on Brown's glasses, and that she could not exclude Brown, due to the small sample size, as a contributor to the blood found on the broken beer bottle. *Id.* at ¶16.

Circumstantial evidence further implicated Brown in the slaying.

A homeless man, Jeremy Kitchen, whom Hout had taken into her home, testified that Hout told him, on May 2, that "she and Brown were having some issues over money." *Id.* at ¶20. Hout asked Kitchen to come to her house on May 4, but when Kitchen arrived he found the back door – which Hout always left open – locked.

Two of Hout's neighbors testified they saw Brown talking with Hout on May 4 – the day before Brown "discovered" Hout's body and contrary to his claim he had not seen Hout since May 3. *Id.* at ¶19.

Lisa Corn, who was acquainted with both Brown and Hout, testified that Brown occasionally spent the night at her house. Brown came to her house on May 4 around 8:00 p.m. and took a forty-minute shower. *Id.* at ¶21. Chris Linkous, a friend of both Corn and Brown, testified that he was at Corn's house on May 4 and that Brown had taken an unusually long shower that night. *Id.* at ¶23.

Brown presented what he characterizes an alibi defense in the form of testimony from his two sisters, his niece, and his mother.

These witnesses testified that Brown had been in one or all of their presences until 6:30 or 7:00 p.m. on May 5. *Id.* at ¶¶28–31. Brown's niece then drove Brown to Hout's home and was present when, after going to the back of the house, Brown "ran out of the front door about five seconds later, and began rolling on the ground and yelling hysterically, 'She's done.'" *Id.* at ¶29.

None of the witnesses accounted, however, for Brown's whereabouts on May 4.

Brown testified that he had last seen Hout on May 3, at home.

According to Brown, Hout had "two 'dates' scheduled for the evening" of May 3. *Id.* at ¶33. Twice that night, Hout left the house for about a half-hour each time, after which she returned with crack-cocaine that she and Brown smoked. Hout used Brown's cell phone to make another call, after which they "walked to a big house where Brown sat while Ms. Hout walked down an alley alone because Brown 'might scare them off.'" *Id.* Thereafter:

> the two returned to [Hout's] home where "we * * * did what we did and she got the mother load." Brown got another text on his phone which simply read, "$ $ $ $." [Hout] told him, "mo money, mo money, mo money, mo money, I got to go." Brown testified that he told her, "Baby, we had enough. I had enough. I gotta go."

*Id.*

Brown denied ever having sex with Hout or being her "pimp."

4

Brown also testified that, about a week before Hout's murder, she called him and said "she 'f'ed up' because she had stolen some drugs from some Guatemalan or Mexican men." *Id.* at ¶34. According to Brown, Hout "sounded scared and he became scared for her and himself, although he did not explain why." *Id.*

After hearing this evidence over the course of a four-day trial, the jury convicted Brown of murder and aggravated murder, the latter charged predicated on Brown's having killed Hout during an aggravated burglary. (Doc. 37 at 11). The trial court merged the convictions for sentencing purposes and imposed a life term on the aggravated-murder conviction.

Brown appealed to the Ohio Court of Appeals, Ninth District, but that court rejected his claims that the evidence was insufficient to convict and that the convictions were against the manifest weight of the evidence. *Brown*, *supra*, 2013-Ohio-2945, at ¶¶26–47.

Brown then filed a petition for discretionary review in the Ohio Supreme Court, raising the same claims he had raised in the appellate court. The state high court declined jurisdiction. *State v. Brown*, 136 Ohio St. 3d 1560 (2013) (table).

## B. Application to Reopen the Direct Appeal

While his appeal was pending in the Ohio Supreme Court, Brown filed an application to reopen his direct appeal. *See* Ohio App. R. 26(B).

Brown claimed he received ineffective assistance of appellate counsel because his lawyer did not argue that trial counsel was ineffective for failing to: 1) subpoena Librado, who allegedly confessed to killing Hout, and/or Hannah Van Brunt, the fifteen-year-old to whom Librado had admitted his guilt; and 2) request a jury instruction on Brown's alibi. (Doc. 9–1 at 169–78).

5

To support these claims, Brown attached a copy of a statement Van Brunt gave to police on May 11, 2011. (*Id.* at 209). According to Van Brunt:

> I . . . called Librado's phone and asked him why the police were [at his house] and all he said in that phone call was "so . . ." and I said "Seriously, Librado why was the cops there? He said "I don't know[.] I am going to jail soon." Then he hung up and me (Hannah) and Samantha Ralston [who was Van Brunt's foster sister] kept trying to call him back and he turned of[f] his phone. Two or three days later I finally got ahold of Librado and I (Hannah) was talking to him and I asked him again what happened and Librado said "Jamie stole a kilo of coke out of my lock box and was handing it out and braging [*sic*] about it so I had to do what I had to do." Samantha and I (Hannah) have not talked to him since. Librado will not answer our calls[.]

(*Id.*).

It is undisputed that the prosecution disclosed this statement to Brown's trial attorney during discovery. (Doc. 13–5 at ¶2) (declaration of Assistant Wayne County Prosecuting Attorney John Williams). Because the statement was not a part of the direct-appeal record, however, the state appellate court held that appellate counsel had no basis to argue that trial counsel was ineffective for failing to call Librado or Van Brunt:

> In regard to appellant's first assignment of error, there is nothing in the record to demonstrate the existence of any other person who confessed to murdering the victim in this case. Because there is nothing in the record to indicate that trial counsel was aware of any such person, appellate counsel not have raised this issue on appeal. Appellant's first issue is one properly reserved for consideration upon a petition for post-conviction relief rather than application for reopening of the appeal.

(Doc. 9–1 at 212).

Brown tried to renew these claims in the Ohio Supreme Court, but the court declined jurisdiction. *State v. Brown*, 2014-Ohio-1182 (Ohio 2014).

### C. Postconviction Litigation

Brown filed a pro se postconviction petition on January 22, 2014, alleging that trial counsel was ineffective for not subpoenaing or calling either Librado or Van Brunt.

The state trial court rejected the petition on timeliness grounds. (Doc. 9–1 at 242).

Under Ohio law, a postconviction petition is due within "one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication[.]" O.R.C. § 2953.21(A)(2) (West 2014). Because the court reporter's office filed the transcript on January 17, 2012 (Doc. 9–1 at 256–57), Brown's deadline was July 16, 2012; his petition was thus eighteen months late.

Brown filed a notice of appeal, but the state appellate court dismissed the notice as untimely. He then tried filing a second notice of appeal and a motion for leave to take a delayed appeal, but the court of appeals denied the motion and dismissed the appeal. (Doc. 9–1 at 255). It explained that Appellate Rule 5(A), which allows delayed appeals in criminal cases, does not apply in postconviction cases. (*Id.*).

Brown did not appeal to the Ohio Supreme Court

### D. Federal Habeas Proceedings

Brown's petition raised what he styled as, and what the Magistrate Judge accepted to be, five grounds for relief. (Doc. 1 at 2–3, 7). In my view, however, the petition raises two grounds for relief, with one ground resting on four different factual predicates:

1. Actual innocence (ground one);

2. Ineffective assistance of appellate counsel based on counsel's failure to:

7

> A. argue trial counsel was ineffective for not subpoenaing Librado and Van Brunt (ground two);
>
> B. argue trial counsel was ineffective for not requesting an alibi jury instruction (ground three);
>
> C. tell Brown that he needed to bring any claim pertaining to Van Brunt's statement in a postconviction petition (ground four); and
>
> D. tell Brown when the court reporter had filed the transcript in the Court of Appeals (ground five).

(*Id.*).

### 1. Construing the Petition

After the Warden filed her return, Brown filed motions to expand the record, appoint counsel, and hold an evidentiary hearing. (Docs. 10, 14).

In an order disposing of these motions, Magistrate Judge Vecchiarelli determined that Brown's pleadings "can be reasonably construed to assert" not only a claim that appellate counsel was ineffective for failing to argue that trial counsel was ineffective, but also an independent ineffective-assistance-of-trial-counsel claim based on the failure to call Librado and/or Van Brunt. (Doc. 19 at 2).

The Magistrate Judge chided the respondent for "entirely fail[ing] to address" the merits of that claim in her return, and for contending "in a perfunctory manner, with little analysis " that any trial-counsel claim was procedurally defaulted. (*Id.*).

Citing the "complicated nature of the procedural issues involved in [Brown's] ineffective assistance of trial counsel claim, as well as the lack of factual development regarding the claim and the issue of whether his appellate counsel failed to properly advise him of the state post-conviction procedures[,]" the Magistrate Judge appointed counsel for Brown. (*Id.* at 3).

The appointment order directed counsel to address three issues: 1) whether appellate counsel told Brown about the time limits for filing a § 2953.23 petition; 2) whether appellate counsel was ineffective *vis-a-vis* that question; and 3) whether trial counsel was ineffective for not calling Van Brunt or Librado. (*Id.* at 4). Once counsel filed his brief, the Magistrate Judge terminated his appointment.

## 2. The R&R

### a. Defaulted Claims

Magistrate Judge Vecchiarelli concluded that Brown procedurally defaulted, in three different ways, his claim that trial counsel was ineffective for not calling Librado and/or Van Brunt.

First, Brown raised that claim in a postconviction petition that the state trial court found was untimely. (Doc. 37 at 28). Second, the Ohio Court of Appeals dismissed Brown's appeal from the denial of postconviction relief because the appeal itself was untimely, and because Appellate Rule 5(A) does not provide for delayed appeals in postconviction cases. (*Id.* at 29–30). Third, Brown failed to appeal to the Ohio Supreme Court and thus did not present the trial-counsel claim in one full round of state-court review.

The Magistrate Judge then held that Brown could not establish cause and prejudice to excuse the default. (*Id.* at 30–36).

Brown argued that appellate counsel did not tell him how to calculate the deadline for filing a postconviction petition. According to Brown, that omission provided cause and prejudice under *Gunner v. Welch*, 749 F.3d 511 (6th Cir. 2014), which held that an appellate lawyer's failure to tell his client that the limitations period for filing a postconviction begins with the filing of the record on appeal excused a procedural default.

9

  The Magistrate Judge rejected that argument in light of the evidence that appellate counsel had told Brown precisely when the deadline to file a postconviction petition was.

  In a letter to Brown dated December 5, 2011, appellate counsel advised him about the postconviction process and explained that any such petition "must be filed within 180 days of the date the transcript becomes available." (Doc. 24–1 at 17). Then, on January 25, 2012, counsel sent Brown a letter with the subject line "post conviction petition deadline July 2012, Ohio Public Defender." (*Id.* at 16). Counsel explained that if Brown had:

> information about someone that you think killed Ms. Hout, and if you learned about this information <u>since the trial</u>, you should contact the Ohio Public Defender. As I told you before, I do not do the post conviction petition. The Ohio Public Defender will do one, if there is enough evidence to warrant it. Their deadline for filing is July 16, 2012. I mention this because, in your letter of Jan. 3, you said a friend of yours said "they let the killer go." Any information you have should be sent as soon as possible to [the Ohio Public Defender].

*Id.* (emphasis in original).

  Based on this evidence, the Magistrate Judge found that:

> Brown cannot genuinely assert that he first learned his transcript had been filed in January 2014, when he filed his post-conviction petition. The correspondence directly contradicts [Brown's] claim that appellate counsel failed to timely and adequately inform [him] of both the triggering event and the time requirements for the filing of a post-conviction petition. Accordingly, [Brown's] claim that his counsel did not adequately inform him of the filing deadline lacks merit.

(Doc. 37 at 35).

  The Magistrate Judge then held that Brown defaulted, by never arguing in state court, his appellate-counsel claim based on the alleged failure to advise Brown about the time limits for filing a postconviction petition. (*Id.* at 37).

**b. Preserved Claims**

Magistrate Judge Vecchiarelli then turned to the merits of Brown's preserved claims.

She rejected his actual-innocence claim as noncognizable. (*Id.* at 40–41). The Magistrate Judge then held that, assuming one could construe this claim as a sufficiency-of-the-evidence claim, the Ohio Court of Appeals reasonably determined that the evidence supported Brown's convictions. (*Id.* at 41–46).

The Magistrate Judge then found that the state appellate court reasonably rejected Brown's ineffective-assistance-of-appellate-counsel claims.

First, because there was no evidence in the direct-appeal record showing that Librado had confessed to Van Brunt, Magistrate Judge Vecchiarelli recognized that direct-appeal counsel could not, consistent with Ohio law, argue that trial counsel was ineffective for not calling either witness. (*Id.* at 50; *see also id.* at 50 n.14 ("As the state appellate court noted, Ohio law requires that claims based on evidence outside the record be raised in a post-conviction petition," not on direct appeal.).

Second, because the trial court did, in fact, instruct the jury on Brown's alibi defense (Doc. 9–4 at 57), the Magistrate Judge ruled appellate counsel had not basis to argue trial counsel was ineffective for not requesting such an instruction. (Doc. 37 at 50–51).

**Standard of Review**

Because Brown has filed an objection, I must make "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). I may also "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

11

**Discussion**

At the outset, I have grave doubts about the Magistrate Judge's determination that Brown's petition and related pleadings "can be reasonably construed to assert that [Brown] received ineffective assistance of trial counsel" based on counsel's failure to subpoena or call as witnesses Librado and/or Van Brunt.

Brown's petition is clear: he seeks relief only on the ground that appellate counsel was ineffective for not arguing trial counsel erred in failing to subpoena or call these witnesses. The petition contains no claim that trial counsel was ineffective.

To be sure, the appellate-counsel claim is closely bound up with the merits of the trial-counsel claim. When a criminal defendant or habeas petitioner alleges an attorney was ineffective for not pursuing a given issue, the strength or weakness of that issue sheds light on the reasonableness of counsel's overall performance. As a result, whether counsel was, in fact, ineffective, depends in no small part on the merits of the underlying and unpursued claim.

But it does not follow that it is reasonable to construe a habeas petition alleging that counsel was ineffective for failing to raise Claim X as also alleging, as an independent ground for habeas relief, Claim X. *Cf. Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) (arguing in state court that counsel was ineffective for not pursuing a given issue does not give state court a fair opportunity to decide the underlying claim).

Nevertheless, given the absence of an objection from the Warden, the difficult relation-back issue that would arise were I to rule that Brown's petition did not plead a trial-counsel claim,[1] and

---

[1] In October, 2015, Brown moved to amend his petition with the trial-counsel claim predicated on counsel's failure to call Librado and Van Brunt. (Docs. 30, 30–1). That amendment was clearly untimely, however: the limitations period began running on March 26, 2014, when

the clear and insurmountable procedural default that blocks my review of that claim, I will assume the Magistrate Judge properly construed the petition as raising a trial-counsel claim and turn to Brown's objections.

### A. Cause to Excuse Brown's Default of the Trial-Counsel Claim

### 1. No Obligation to Appeal under Ohio Law

Brown first objects to the Magistrate Judge's ruling that he could not show cause to excuse the default blocking review of his ineffective-assistance-of-trial-counsel claim based on the failure to call Librado and Van Brunt. (Doc. 40 at 17–18).

While Brown admits that his state postconviction petition was untimely, he claims that, once the trial court denied the petition on that basis, he was "then released from any *further* obligation to appeal the trial court's denial of his untimely [petition] to the state appellate court[.]" (*Id.* at 18) (emphasis in original). To support this argument, Brown relies on *State v. King*, 2007-Ohio-6233 (Ohio App.), and O.R.C. § 2953.21.

*King* and § 2953.21 are beside the point, as they deal with the procedures for filing a successive postconviction petition under Ohio law. Moreover, it is federal law and the fair-presentment rule that required Brown to present his trial-counsel claim to each level of the Ohio courts.

---

proceedings on Brown's motion to reopen his direct appeal wrapped up (Doc. 9–1 at 235), and expired one year later. (Postconviction proceedings extended into June, 2014, but Brown's petition was untimely under state law, and he did not take a timely appeal. There was thus no properly filed application for postconviction review pending after March 26, 2014. *Pace v. DiGuglielmo*, 544 U.S. 408 (2005)). The propriety of the amendment therefore turns on whether the untimely trial-counsel claim differed in "both time and type" from the timely appellate-counsel claim, *Mayle v. Felix*, 545 U.S. 644, 650 (2005), an issue that the parties have not addressed.

Brown indisputably having failed to present his claim that trial counsel was ineffective for not calling Librado or Van Brunt to either the Ohio Court of Appeals or the Ohio Supreme Court, the claim is, as Magistrate Judge Vecchiarelli found, procedurally defaulted.[2]

### 2. Counsel's Advice re. Postconviction Petition

Brown next objects to the Magistrate Judge's finding that appellate counsel properly advised Brown of when his postconviction petition was due, and thus that Brown had not shown cause and prejudice to excuse his default of the trial-counsel claim. (Doc. 40 at 19–20).

According to Brown, counsel told him that, if he wanted to file a postconviction petition, he must have an attorney representing him, and that he could not file the petition pro se. (*Id.*).

I have reviewed counsel's letters to Brown (Doc. 24–1 at 3, 5–8, 17) and the Magistrate Judge's findings, and I find no error in the Magistrate Judge's determination that counsel never told Brown he could not file the petition pro se, and that, read in context, counsel's statements about "needing to hire an attorney" meant only that appellate counsel himself would not be handling any collateral litigation.

Brown was clearly on notice of when his postconviction petition was due, having received due and proper advice on that subject from appellate counsel. He therefore has not shown cause and prejudice to excuse the default blocking review of his claim that trial counsel was ineffective for not calling Librado and Van Brunt.

---

[2] I do not rely on the Magistrate Judge's finding that the trial-counsel claim is also defaulted because the state trial court rejected Brown's petition raising this claim as untimely. Brown did not have the assistance of counsel in the state postconviction trial court, and it is an open question in the Sixth Circuit whether that excuses his default under *Martinez v. Ryan*, --- U.S. ---, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, --- U.S. ---, 133 S. Ct. 1911 (2013). *See Onunwor v. Moore*, --- F. App'x ----, 2016 WL 3626828, *5 (6th Cir.).

Finally, and in any event, this appellate-counsel claim cannot excuse Brown's default because he never raised it in the Ohio courts. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).[3]

### 3. Remainder of Objections

Brown devotes a substantial portion of his objection to discussing the merits of his trial-counsel claim. (Doc. 40 at 24–29). Because that claim is defaulted, these objections are moot.

### B. Sufficiency-of-the-Evidence Claim

Brown also objects to the Magistrate Judge's conclusion that the state appellate court reasonably held the evidence was sufficient to convict.[4] (*Id.* at 32–33). According to Brown, there was no evidence "to warrant a guilty finding as to the felony murder count that was predicated on the *sole underlying theory* of rape[.]" (*Id.*) (emphasis in original).

This objection is meritless.

The prosecution's theory was that Brown had killed Hout during either a kidnapping or an aggravated burglary (Doc. 9–4 at 51) (trial court's instructions on elements of aggravated-murder charge), and the state appellate court held that the evidence supported an aggravated-murder conviction predicated on aggravated burglary. *Brown*, *supra*, 2013-Ohio-2945, at ¶¶25–26. Brown takes no issue with that ruling.

---

[3] I note, like the Magistrate Judge noted (Doc. 37 at 36 n.9), that Brown does not assert actual innocence as a basis for excusing his default. I also note the Magistrate Judge's discussion of trial evidence showing that police obtained blood and fingerprint samples from a man named Librato Ascencio, and that investigators: 1) excluded Ascencio as a contributor to the blood sample on the broken beer bottle; and 2) concluded that his fingerprints were not on the bottle. (*Id.* at 36 n.10)

[4] It is not apparent that Brown's petition actually raised a sufficiency claim, but the Warden, seemingly out of an abundance of caution, addressed this claim in her return. (Doc. 9 at 14). This prompted Brown to move to amend his petition to include that claim, but hat motion, too, is untimely. To avoid dealing with the relation-back issue, I will simply assume the sufficiency claim is in the original petition.

Whether there was also evidence to support an aggravated-murder conviction predicated on rape, a charge on which the prosecution secured an indictment but withdrew before the jury began deliberating, is irrelevant.

**Conclusion**

It is, therefore,

ORDERED THAT:

1. Brown's objections (Doc. 40) to the Magistrate Judge's Report and Recommendation be, and the same hereby are, overruled;

2. The Report and Recommendation (Doc. 37) be, and the same hereby is, adopted as the order of the court subject to the reservations described above;

3. The petition for a writ of habeas corpus (Doc. 1) be, and the same hereby is, denied;

4. Brown's motions for leave to amend his petition (Docs. 30, 35) be, and the same hereby are, denied as moot;

5. No certificate of appealability will issue, as reasonable judges would not debate that all of Brown's claims are defaulted or meritless; and

6. No appeal could be taken from this order in good faith, and none shall be allowed absent prepayment of the filing fee. *See* 28 U.S.C. § 1915(a)(3).

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge